BASCHE, Respondent, vs. VANDEN HEUVEL and another, Appellants.

*November 6—December 4, 1951.*

For the appellants there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

For the respondent there was a brief by *Chadek, Cornelisen, Denissen & Farrell,* and oral argument by *Frank P. Cornelisen* and *E. D. Kranzush,* all of Green Bay.

GEHL, J.   This was an unmarked crosswalk.  No complaint is made of the court's instruction defining a crosswalk as follows:

"A crosswalk is defined by statute as that portion of the highway ordinarily included within the prolongation of the curb and property lines at intersections or any other portion of the highway clearly indicated for pedestrian crossing by lines or other markers on the surface. . . . The crosswalk referred to in the statute, . . . is the crosswalk that exists when taking the inside of the sidewalk line as being the property line."

There is some dispute in the testimony as to the place at which the plaintiff stepped into the street, and there is also dispute as to the distance from the west extended property line of Roosevelt street at which defendant had parked his car.  The plaintiff contends that she left the curb and was proceeding upon the crosswalk, and the defendant contends that she left it to the west thereof.  With respect to the distance from the westerly edge of the crosswalk at which the defendant parked his car he claims that it was from three to five feet west therefrom and plaintiff contends that the

rear of his car was parked twelve to fifteen feet west there-from.

The jury found that plaintiff was on the crosswalk after she left the curb. Support for that finding is found in plaintiff's testimony that she had crossed where she was supposed to cross; that she was near a light post (which an engineer had testified was 1.6 feet west of the west edge of the property line, which line was considered at the trial also as the west edge of the unmarked crosswalk); and by the testimony of a disinterested witness who testified that he picked her up at a point eight feet east of the west curb of Roosevelt street.

Defendant attacks her testimony because of claimed conflicting statements made at an adverse examination. We may not say that the jury was not permitted to accept the story told by her at the trial. *Van Galder v. Snyder,* 254 Wis. 120, 35 N. W. (2d) 187.

Having found that the plaintiff was on the crosswalk when struck by defendant's automobile the jury was permitted to find also that she was not negligent with respect to yielding the right of way to the automobile.

The jury also found that she was not negligent with respect to lookout. She testified that before she stepped down she glanced toward the automobile and observed the defendant and his guest going into the car; that when she made this observation they were on the "sidewalk side of the car."

The defendant testified that it was his intention to back his car to Roosevelt street and into that street for the purpose of turning his car and proceeding easterly on Main street.

If, as we determine, the jury was warranted in finding that the rear end of the car was as much as twelve to fifteen feet west of the west edge of the crosswalk, it was also warranted in assuming that the plaintiff was not under the circumstances required to anticipate that he would back his car

that long distance so as to endanger her; the jury might well have considered that plaintiff might assume that if the defendant planned to move his car he would do so for the purpose of proceeding forward to the west and that therefore the plaintiff had no reason to make more than her first observation of the car. It was for the jury to say whether she should have made further observation and we consider that under the circumstances the jury was warranted in exonerating plaintiff as to lookout.

No Wisconsin cases have been cited to our attention, nor do we find any which deal with the question of a pedestrian's duty with respect to proper observation to his right before entering a street to ascertain the operation of a parked car which may or may not be backing into his path. Defendant cites a number of Wisconsin cases dealing with the duty of a pedestrian about to, or crossing a street, but each of them involves his duty as against an automobile proceeding forward.

He also cites several cases of foreign jurisdictions which have considered the subject but a careful reading of those cases discloses that the court in each of them considered that whether or not the pedestrian was negligent as to lookout in the case of an automobile being backed toward him was for the jury.

We might consider that defendant's contention that the jury's findings as to speed and as to giving warning of the backward movement of his automobile find no support in the evidence. The jury's findings in those respects are, to say the least, based on very meager testimony. However, that is immaterial if there is evidence to support the finding that defendant was guilty of causal negligence with respect to yielding the right of way and with respect to lookout. If there is such testimony we need not be concerned with the finding as to speed and warning, for in the absence of a

finding of causal negligence on the part of plaintiff, there was no occasion for the jury to compare the negligence of the parties.

Defendant contends further that the jury's finding that he was guilty of causal negligence with respect to lookout is not supported by the evidence. We consider that the finding is properly supported by defendant's admission that he did not see her; that he does not know whether he looked east; that when he started he opened his door and was looking out of it without indicating in what direction he looked, and that he did not look into his rear-view mirror before proceeding backward.

The jury was warranted in finding that the plaintiff was not negligent with respect to yielding the right of way; it follows as a corollary that they were also warranted in finding that the defendant was negligent in that respect.

Defendant contends that the award of damages is excessive and that such excessive award arises from the fact that the jury was permitted to infer, without support in the evidence, that the disability suffered by plaintiff in a subsequent accident which occurred about fifteen months after the first, resulted from the first accident. There was testimony that she suffered a subsequent injury in November, 1949, and that there was increased pain and disability after that event.

Dr. Freedman, testifying for plaintiff, testified that the disability of the right knee resulting from the first accident is permanent and that the instability in the knee caused it to be more susceptible to trauma.

Dr. Jandrain, testifying for plaintiff, stated that on November 9, 1949, a few days after the second accident, he found the condition of her knee to be practically the same as he had found it upon his examination after the first accident; he testified, also, that the partial tear of the inside

ligament of the knee joint resulting from the first injury, occasioned permanent disability.

Dr. Nellen, testified for defendant as follows:

"*Q.* Isn't it likewise true, Dr. Nellen, that a person who has had an injury such as Mrs. Basche received would be more susceptible to throwing the knee joint out, as she did on or near November 5th? *A.* Well, now, how long after the original injury was that?

"*Q.* From July 30th, of 1948, to November 5th, of 1949? *A.* Yes, she would, at that time.

"*Q.* And it would be a natural thing to expect that if she walked on a stone or on a little uneven surface or turned, she might throw the joint out again? *A.* At this time?

"*Q.* No, at that time. *A.* Yes. I don't think at that time that the ultimate healing had occurred. Of course, she is also susceptible to the same thing happening to the left knee."

True, as defendant contends, Dr. Nellen later sought to correct his testimony by stating that when he answered previously he assumed that the second injury occurred within a year of the first, and that he thought that there had been a shorter interval of time between the two, he *might* correct himself. It was for the jury to accept either of his statements, the first quite definite and the second somewhat equivocal. *Van Galder v. Snyder, supra.*

In its instructions regarding the questions as to damages, that in assessing damages for loss of income, pain, suffering, and physical disability the court directed that the jury—

". . . should take into consideration and fix just and reasonable compensation . . . only so far as they have been proved to a reasonable certainty by the greater weight of the credible evidence to have been sustained by the plaintiff and to have been produced as a natural consequence of the personal injuries received in the collision. . . .

"Now, on the question of whether you should include in your assessment of damages any sum for the injuries which

plaintiff received on or about November 5, 1949, when she sustained another injury to the medial collateral ligament of the right knee, you are instructed that if plaintiff was walking about and making use of her leg in accordance with her doctor's instructions, and she accidentally, without any negligence on her part, sustained a new or further injury to the knee, and such injury would not have occurred but for the injuries received when struck by defendant's car on July 30, 1948, and you are satisfied to a reasonable certainty by the greater weight of the credible evidence that such new or further injury naturally resulted from the injuries received when struck by the car, then just compensation should be included for such new or further injury, and if you are not so satisfied, no allowance should be made for them."

We have no way of determining from the record that the jury in assessing damages entered any amount for pain, suffering, and disability which plaintiff suffered as a direct result of the second injury. We must assume, however, in the absence of any showing to the contrary, that the jury in making its assessment followed the instructions of the court and that its award represents what it believed is required to compensate her for the injuries suffered in the first accident. *Curkeet v. Joint School Dist.* 159 Wis. 149, 149 N. W. 708.

We have not sought to set forth in any great detail the testimony adduced upon the trial. It is our function to determine whether there is credible evidence to support the verdict and, therefore, we have recited only such credible evidence which tends to support it. *Martell v. Kutcher,* 195 Wis. 19, 216 N. W. 522.

*By the Court.*—Judgment affirmed.