SKOW, Respondent, vs. GREEN BAY & WESTERN RAILROAD COMPANY, Appellant.

*October 29—November 12, 1909.*

*Carriers: Negligence: Injury to passenger alighting from train: Unsafe place: Insufficient lighting: Questions for jury: Contributory negligence: Evidence: Damages: Prospective profits or earnings of married woman: Reducing damages to cure error: Appeal: Printed case: Costs.*

1. It is the duty of a common carrier of passengers to furnish a reasonably safe place for passengers to alight from trains; and for injury to a passenger exercising due care, caused by negligent failure to perform such duty, the carrier is liable.

2. Evidence showing that there was a space of about fourteen inches between the edge of the lowest step of a passenger car and the edge of the depot platform, which was about six inches below the step and about twenty-two inches above the level of the ground, and tending to show that the place was not sufficiently lighted to enable passengers to see such open space at the time when plaintiff, alighting from the train in the night, stepped or fell between the car step and the platform, is *held* to sustain findings by the jury to the effect that the place so provided for passengers to alight was not reasonably safe.

3. A finding that plaintiff was not guilty of contributory negligence is also *held* to be sustained by the evidence.

4. Where, in an action by a married woman for personal injuries, defendant was permitted to show generally that plaintiff's husband had difficulties with persons for whom he sold goods as to his returns on sales, that she had knowledge thereof, and that it caused her trouble and worry, it was not error to ex-

clude further evidence to show specifically a defalcation of the husband and plaintiff's knowledge thereof as accounting for her insomnia, which she attributed to her injuries.

5. In an action by a married woman for personal injuries it appeared that she was a nurse by profession and had engaged in nursing at irregular intervals before and from time to time after her marriage, that she had done no nursing for about a year prior to the accident, and that she was not then established as a nurse at the place of her residence. She testified that she had expected to do nursing or start a hospital at that place within a few months after the time of the accident. *Held*, that these facts were insufficient to warrant a recovery for loss of prospective profits or individual earnings in her separate business.

6. The jury in such case having been erroneously allowed to consider evidence on which they might have awarded compensation for prospective loss to plaintiff's separate business and individual earnings, reduction of the damages awarded from $2,500 to $1,500 is deemed sufficient to cure the error.

7. Costs are not allowed for the printing of a case in violation of Supreme Court Rule 6.

APPEAL from a judgment of the circuit court for Jackson county: JAMES O'NEILL, Circuit Judge. *Reversed.*

This is an action for damages for personal injuries alleged to be due to the negligence of the defendant. Defendant is a railway company operating a railroad. At the time of the trial of the action plaintiff was a woman thirty-three years of age. She had been married for eleven years. There were no children. Prior to her marriage she had been employed as a nurse, and after her marriage she had done more or less of it during the four years she and her husband lived at Winona, Minnesota, during the two years they lived at Galesville in this state, and during the three years they lived in Vernon county. She had done no nursing after the removal of herself and her husband to Black River Falls, which was about four months before the injuries were received. When she went out nursing she paid from her earnings for the help which was required to perform the household duties in her home. For a while she had run a hospital of her own at Galesville. Her earnings while nursing were from $10 to

$25 per week, depending on the nature and seriousness of the illness and the ability of the patient to pay. For upwards of a year before the trial she had done no nursing, but she testified that she intended to start up a hospital in the spring. Plaintiff stated that she could not state how many months or weeks she spent in nursing, but that she went out whenever she felt like it.

The injuries were received in alighting from a passenger coach of the defendant onto the depot platform at Merrillan, Wisconsin. The distance from the outer edge of the lowest car step to the outer edge of the depot platform was thirteen and five-eighths inches. The depot platform was five and three-fourths inches lower than the last car step, and the distance in a direct line from the edge of the lowest car step to the edge of the platform was fourteen and one-half inches. The platform was twenty-one and five-eighths inches above the level of the ground underneath. Ten days previous to the day of injury the plaintiff had entered defendant's train at this place in the daytime. The plaintiff on January 8, 1908, was a passenger on the train of the defendant from Taylor station, Jackson county, Wisconsin, to the village of Merrillan, Wisconsin. The train was due at Merrillan at 8 o'clock. Shortly before the train arrived at the station the station was called, and upon arrival the plaintiff followed the conductor of the train through the door of the car onto the platform and down the steps. The evidence is in conflict as to whether or not the conductor assisted the plaintiff in stepping from the car step onto the platform and as to whether or not the plaintiff's foot touched the platform. Plaintiff testified that she stepped into the open space between the car step and the platform; that she fell to the ground, and then forward upon the platform. Some seventy feet from the place of injury an electric light of thirty-two candle power was fastened by a bracket over the entrance of the Campbell hotel. There is evidence that this light was dim and probably not more than ten candle power. The evidence is in conflict as to whether or not the

conductor carried a lantern. Aside from this lantern, the electric light at the hotel entrance, which had a reflector above it to throw the light toward the place of injury, was the only light which could reach the place of injury directly. From the windows of the hotel and the depot building, which were from fifty-nine to seventy feet from the place of injury, some light shone indirectly. The lights of the train were also burning. The evidence is that the night was dark. Plaintiff testified that the darkness prevented her from distinguishing the depot platform from the opening between it and the car step. The conductor assisted the plaintiff to arise after she had fallen, and into the waiting room of the depot. About three hours later the plaintiff took a train on another line of railroad from the same platform for her home in Black River Falls. She walked from the conveyance which had taken her from the depot to her home into the house. In the afternoon of the next day the plaintiff called her physician. He found "a swelling of the right knee; a discoloration of the knee, extending up the thigh as far as the hip of the right side;" "a swelling of the right ankle;" "a swelling of the left ankle, and evidence of severe contusion at the junction of the lower third with the upper two-thirds of the leg, and discoloration of the whole leg from the ankle to the knee;" "a slight depression into the bony tissue of this shin bone;" "a displacement backward of the womb, and considerable tenderness and swelling in the region in and about the womb and over it." There was evidence that the displacement of the womb was probably congenital. The plaintiff lay abed for two weeks, the physician calling daily. For some time thereafter she called at her physician's office every other day. The evidence was to the effect that the displacement of the womb would require a surgical operation for its correction.

The court submitted a special verdict as follows:

"(1) Was the plaintiff injured on the 8th day of January, 1908, at the station of the defendant, while alighting from the defendant's train? A. (by the court) Yes.

"(2) Did the defendant fail to exercise ordinary care in the manner in which the platform was constructed at the point where the accident occurred to the plaintiff, in respect to the relation of the platform to the car step? A. Yes.

"(3) If you answer the last question 'Yes,' then was such failure to exercise ordinary care in the construction of the platform a proximate cause of plaintiff's injuries? A. Yes.

"(4) Did the defendant fail to exercise ordinary care in the lighting of the platform at the time and place of the accident, in that the platform was insufficiently lighted to enable a passenger in the exercise of care to descend from the car steps to the platform with reasonable safety? A. Yes.

"(5) If you answer the last question 'Yes,' then was such failure to exercise ordinary care in the lighting of the platform a proximate cause of plaintiff's injuries? A. Yes.

"(6) Was the plaintiff guilty of any want of ordinary care which proximately contributed to her injury. A. No.

"(7) If the court shall be of opinion that plaintiff is entitled to recover, at what sum do you assess her damages? A. Two thousand five hundred dollars."

The court refused to submit a special verdict of twelve questions as requested by the defendant. The special verdict which was submitted covers the questions embraced in the special verdict requested by the defendant with the exception of five questions, which do not embrace any issues raised by the pleadings and refer to mere conflicts in the evidence. Judgment was entered upon the special verdict as found for the plaintiff. This is an appeal from the judgment.

*G. M. Perry,* for the appellant.

*L. O. Ellis,* attorney, and *S. M. Marsh,* of counsel, for the respondent.

SIEBECKER, J. The law is well established in the adjudications of this court that it is the duty of common carriers, of passengers to furnish a reasonably safe place for passengers to alight from trains, and if such carrier negligently fails to perform this duty and thereby proximately causes injury to a passenger in the exercise of due care the carrier is liable for

the resulting damage.    *McDermott v. C. & N. W. R. Co.* 82
Wis. 246, 52 N. W. 85, and cases there cited.    The jury
found that the defendant failed in two respects in its duty to
furnish a reasonably safe place for passengers to alight:
(1) In so constructing its depot platform as to leave a danger-
ously large space between the platform and the lowest step of
the passenger car; and (2) in furnishing insufficient light at
this place to enable passengers to see this open space between
the platform and step.    The evidence shows that the platform
was used for the conduct of defendant's passenger business in
the day and night time.    As stated in *Patten v. C. & N. W.
R. Co.* 32 Wis. 524:

"Whether there was a want of such care and prudence as
the company should exercise, in a particular case, in not hav-
ing a light in or about the depot when plaintiff left the train
is not a pure question of law, but rather one of law and fact.
In some cases it might constitute negligence, and in others
not. . . . But where the question is one of law and fact, or of
a mixed character, it should be left to the jury."

An examination of the evidence in this case shows that it is
not so clear that sufficient light was provided as to exclude all
inferences that the platform was insufficiently lighted at the
place of alighting from the train.    There is evidence tending
to show that this place was insufficiently lighted for passen-
gers to observe the open space between the step and the plat-
form, and that no light, or at most only a very dim light,
reached to the place for alighting from the train.    If the jury
found either of these conditions, the company was guilty of
negligence in not providing sufficient light to enable its pas-
sengers to alight in safety.    *Duell v. C. & N. W. R. Co.* 115
Wis. 516, 92 N. W. 269.    Since the platform was to be used
in the nighttime by the aid of artificial light, we cannot say as
matter of law that the space between the lower step of the
coach and the platform made this a reasonably safe place for
passengers to alight from trains.    The fact that passengers

might readily have observed the open space in the daytime, and that when so observed by them it was a reasonably safe place to alight from trains, does not meet the situation presented here, which required the use of the platform in the nighttime. There is an obvious and marked difference in seeing the open space on these different occasions; and while a place might clearly be reasonably safe for use by daylight, we cannot say it would be so by artificial light. And so here, under the evidence tending to show that the open space could not be seen under the condition of the artificial light provided, it was properly left for the jury to determine whether or not the company performed its duty of furnishing a reasonably safe place to alight from the train, and the verdict as to this issue must stand.

Appellant's counsel, in his argument to show that the defendant was not negligent in the respects alleged, makes assertions and statements to the effect that the plaintiff miscalculated the distance from the car step to the platform; that she failed to call on the trainmen for assistance when she observed that it was dark; that she evidently omitted to look where she was about to step and to locate the platform before stepping off the lowest car step; and that she neglected to retain a hold on the iron railing at the side of the steps while descending. On these assertions counsel predicates the claim that such conduct on her part constitutes negligence contributing to cause her fall and to produce the injuries. The infirmity of these claims is that there are facts and circumstances shown by the evidence either negativing these assertions of fact or giving explanations which left their existence or nonexistence to be found by the jury. Upon the evidence the jury might well have concluded that the plaintiff was ordinarily careful in alighting from the train and we cannot, therefore, disturb their finding on this issue.

Exceptions are urged upon rulings on the admission and rejection of evidence, of which the following only need be no-

ticed: The defendant offered a witness to show specifically the defalcation of plaintiff's husband in his business and her knowledge thereof, as explanatory of and as accounting for her insomnia, but which she attributed to the injuries received in the accident. The court permitted counsel to show generally that her husband had difficulties with persons for whom he sold musical instruments respecting his returns on sales of pianos, that she had knowledge thereof, and that it caused her trouble and worry. We think these matters were sufficiently gone into to enable the jury to determine whether it affected her health or caused her sleeplessness, as claimed by the defendant. In view of the state of this branch of the case no error was committed in excluding further details of the husband's business affairs.

An exception is insisted on to the admission of evidence in behalf of the plaintiff tending to show that she was a nurse by profession, that she had been engaged in the business after her marriage, and that she expected to conduct it as her separate business in the future. The admission of this evidence becomes immaterial in the view we take of this branch of the case in relation to the claim that the damages are excessive. As appears in the foregoing statement, the plaintiff engaged in nursing before and from time to time after her marriage. It also appears that she engaged in such nursing at irregular intervals and on occasions when she felt so inclined. Her testimony also discloses that she did no nursing for about a year immediately preceding the accident, that she was not established as a nurse at Black River Falls, and that she had expected to do nursing again at this place some time in the spring of the year in which the injuries were received. Giving the fullest weight to the evidence on this subject, it fails to show that she was engaged in a separate business or that she was engaged in performing services whose proceeds she was entitled to retain as her individual earnings. . Nor does it show with reasonable certainty that she was about to engage

in such services or business in the future. Furthermore, if it be assumed that she would engage in nursing at some future time, it still remains an imaginary and speculative question whether she has sustained a loss to her prospective business or individual earnings. We are persuaded that the evidence as to her separate business and individual earnings is wholly insufficient to establish a loss with that reasonable certainty required by the law to permit a jury to allow her damages therefor.

A liability of the defendant for the damages plaintiff has suffered has been found by the jury; but, since the court improperly submitted evidence to them on which they may have awarded her compensation for the prospective loss to her separate business and individual earnings, we have concluded that the amount allowed the plaintiff as compensatory damages ought to be reduced by the amount allowed by the jury as the damages to her prospective separate business and individual earnings. In view of the evidence of damages for which she was entitled to recover, the jury could not have allowed plaintiff as damages to her prospective separate business and earnings to exceed $1,000. In our judgment a reduction to $1,500 of the amount allowed the plaintiff as compensatory damages will in all reasonable probability cure the error of submitting to the jury the evidence of damages suffered by plaintiff to her prospective separate business and individual earnings. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644.

The printed case is not in conformity to Supreme Court Rule 6, which requires that it shall contain an abridgment of the record so far as necessary to present the questions for decision. As is said in *Johanson v. Webster Mfg. Co.* 139 Wis. 181, 120 N. W. 832, so it is here: "Counsel have attempted no abridgment of the evidence, but apparently have printed in full the reporter's minutes. . . ." Compliance with the rule demands that the printed case shall contain in narrative form

·an abridgment only of the evidence so far as is required by the questions for decision.    Counsel owe the duty of compliance with the court's rules to aid in an expeditious and ·orderly presentation and examination of the cases on appeal. ·Costs for printing a case not complying with the rules are for·bidden by Rule 44.

No other question requires consideration.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial; with the option, however, to the plaintiff, within twenty days after the filing of the *remittitur,* to take judgment against the defendant for the sum of $1,500 and costs.    No costs are to be taxed for printing the case on appeal.