Van Galder, Respondent, vs. Snyder, by Guardian *ad litem,* and another, Appellants.

*November 18—December 15, 1948.*

For the appellants there was a brief by *Crosby H. Summers* of Janesville, and *McCue, Regan & McCue* of Milwaukee, attorneys, and *D. J. Regan* of Milwaukee of counsel, and oral argument by *Mr. Regan* and *Mr. Summers*.

For the respondent there was a brief by *Thronson, Roethe & Agnew* of Janesville, and oral argument by *John T. Roethe* and *Sidney J. Thronson*.

MARTIN, J.  By its special verdict the jury found that plaintiff, C. R. Van Galder, was on a crosswalk when struck by defendant's car; that at or immediately prior to the time of the accident the defendant, Owen Snyder, Jr., failed to exercise ordinary care in respect to keeping a proper lookout and yielding the right of way to the plaintiff, and that such failure was a cause of the accident; and that at or immediately prior to the time of the accident the plaintiff failed to exercise ordinary care for his own safety in respect to keeping a proper lookout and that such failure was a cause of the accident.  The defendant was found eighty per cent negligent and the plaintiff, twenty per cent.

Plaintiff testified that after he left his home he walked on the east side of the sidewalk of Center avenue in a northerly direction to the intersection of West Milwaukee street and after making due observation he proceeded straight across the intersection to the north curb of Milwaukee street.  At that time he noticed that the grocery store was closed and abandoned his mission.  He waited until the wigwag signal and bell at the railway crossing started operation, looked both ways and observing no approaching traffic, started back across the intersection "the same way I came," south across the street to the corner from which he had come.  He was struck by the defendant after he had proceeded some thirty-five to forty feet. No other witness had seen the plaintiff long enough before the collision to know where he was crossing.  The evidence of the plaintiff justified the jury's finding that the plaintiff was on a statutory crosswalk, as defined by sec. 85.10 (23), Stats., when struck.  The fact that plaintiff testified on adverse examination that he was east of the spur track but on the trial, corrected this statement by saying that he was west of the spur track, was a matter for the jury to consider in determining the weight that should be given to the testimony.  *Halamka v. Schneider* (1929), 197 Wis. 538, 222 N. W. 821.  The question of credibility of witnesses is solely within the jury's prov-

ince, and the verdict should not be disturbed if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding. *Webster v. Krembs* (1939), 230 Wis. 252, 282 N. W. 564. We are of the view that there was a jury question whether plaintiff was on the crosswalk and there is ample evidence to sustain the jury's finding. *Hagen v. Thompson* (1947), 251 Wis. 484, 29 N. W. (2d) 515.

In addition to defendant's contention that there was no credible evidence to support the jury's finding that the plaintiff was on a crosswalk when struck, the defendant also contends that the court erred in refusing to instruct that a pedestrian crossing along the usual and practical crosswalk is not tantamount to crossing on the statutory crosswalk.

The trial court in its instructions to the jury regarding the crosswalk quoted sec. 85.10 (23), Stats., and stated:

"The answer to this question simply determines who had the right of way. If Mr. Van Galder was on such a crosswalk at the time he was struck he had the right of way. If he was not on such a crosswalk at that time, then the driver of the automobile had the right of way."

Sec. 85.44 (4), Stats., was then quoted and the court stated:

"Under such circumstances the driver of an automobile has a right to assume that the pedestrian will so yield the right of way, and he may continue in such assumption until it becomes apparent, or ought to be apparent to him, that such pedestrian is by wrongful conduct creating dangers or is either unaware of or cannot avoid the danger.

"If the pedestrian is on a marked or unmarked crosswalk, then he has the right of way, and it is the duty of the automobile driver to yield the right of way to him.

"It is the duty of each, however, in order to be free from negligence, to use all reasonable effort to avoid collision or injury, even though the other person is in the wrong in his course of conduct. A driver or other person having the right of way, may not blindly proceed ahead in the face of danger, but must use reasonable effort to avoid a collision."

It is our opinion that the instructions were complete and adequate.

The defendant contends further that as a matter of law the negligence of the plaintiff was equal to or greater than that of the defendant.

Mr. Van Galder, age seventy-seven, testified that before starting across the intersection, he waited until the wigwag signal and bell went into operation which shuts off traffic from the west on Pleasant street from the direction in which the defendant operated his automobile. William Henning, the watchman in the tower, confirmed the fact that the signal had been shut off just before the collision and had been in operation during the time a freight engine crossed the crossing. Clifford Hall, who was operating a truck eastward on Pleasant street about ten yards to the rear of the Snyder car, also confirmed that as he approached the wigwag on the west side of the railroad tracks it was operating. Plaintiff testified that he looked both ways before he started across, and saw no traffic coming. He had a right to assume that he could safely start across the street while the railroad stop sign protected him from cars approaching from the west. It was not until he was over thirty feet from the north curb that the defendant's car, which had crossed the railroad tracks after the wigwag signal had changed, struck the plaintiff.

As stated previously, this accident happened about eight o'clock in the evening. It was a clear night and the intersection was well lighted by both street lights and filling-station lights. The defendant had adequate lights on the car, and they were turned on. The defendant was familiar with the particular intersection, both as a driver and passenger in automobiles, and there was no other traffic from any direction to distract his attention. The defendant was operating his automobile at a speed of twenty to twenty-five miles per hour as he approached and crossed the railroad tracks but slowed down to ten or fifteen miles per hour to make the left turn onto Milwaukee street. The defendant told Police Officer Murrie that

he failed to see the plaintiff until he was within one foot of striking him. With no traffic approaching and a well-lighted intersection, the defendant had about sixty-six feet to turn either to the right or left to avoid plaintiff, but the evidence shows that he did not see him at all until he actually struck him while turning left directly into his path of travel.

The police officer testified that after the accident defendant's car was seven feet northwest of a "patch brick pavement." He found the left rear wheel of the car twelve feet east of the spur track and skid marks extending fifteen feet to the rear of the defendant's car. Defendant's Exhibit 2 shows that it is approximately fifty feet from the east side of the crosswalk to the patch of brick pavement. The skid marks of fifteen feet started at about the middle of the spur track. To have plaintiff east of the spur track, as claimed by defendant, when hit by defendant's car, would be to disregard the distance the car traveled from the time plaintiff was first observed by defendant until the brakes were applied and took effect. Estimated speed and estimated time of reaction in applying brakes cannot be applied with rules of mathematical certainty. The physical facts are not inconsistent with the finding of the jury that the plaintiff was on the crosswalk.

We cannot say as a matter of law that the jury's comparison of the negligences involved is improper. We have no right to substitute our judgment for the judgment of the jury under the evidence in this case. *Webster v. Roth* (1945), 246 Wis. 535, 18 N. W. (2d) 1.

The remaining question is whether defendants are entitled to a new trial because the jury made alterations on a plat received in evidence. After the jury returned with the special verdict, it was noticed that certain writing or marks had been made upon this particular exhibit and the defendants moved for a new trial. The trial court denied this motion.

The nature and purpose of the marks, if any, is a matter of conjecture. The jury was familiar with the entire intersection, having had a view of it at the beginning of the trial,

and they were properly instructed by the court. We do not regard the marks as affecting the decision in this case. Under the circumstances, a new trial is not justified.

*By the Court.*—Judgment affirmed.