RIVERA, Respondent, v. WOLLIN and another, Appellants.

*January 7—March 17, 1966.*

306

For the appellants there were briefs by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* and *Keith I. Johnston* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

For the respondent there was a brief by *Louis Podell* and *Albert Bahcall*, both of Milwaukee, and oral argument by *Mr. Bahcall.*

FAIRCHILD, J. Defendants contend that the $3,000 fixed by the court as reasonable for past pain and suffering, after determining that $4,000 was excessive, was itself excessive. They contend, also, that the record does not support any award for future pain and suffering. Plaintiff contends that the court erred in setting aside the jury awards; defendants assert, however, that plaintiff is foreclosed from that contention because he did not serve a timely notice of review.

■ *The award for past pain and suffering.* Mr. Rivera testified he was driving about 20 miles per hour when struck by the Wollin automobile, and estimated Wollin's speed at 35 miles per hour. Rivera was thrown against the steering wheel. He testified that he was in pain, that his stomach, back and neck bothered him, that he vomited several times that day.

He went to see Dr. Gerald Zupnik the next day, and saw him daily, for a week. He had heat treatments. He testified his neck cleared up, but back pain continued. He returned to work after missing seven days. He was unable to do the same work as before, but was given a different job. He said he had headaches for a couple of months, and difficulty sleeping.

Dr. Zupnik saw Rivera nine times during August, 1963, and occasionally thereafter until January, 1964.

He found spasm as objective evidence of back pain on the earlier visits. By October 14th, the pain was becoming less severe and less frequent. There was complaint of intermittent pain with bending or lifting, but no further spasm.

Dr. Zupnik concluded that Rivera had sustained a bruising of his abdomen, and a sprain injury to the lumbosacral joint, including injury to the muscles and fascial layers overlying the joint. There was still complaint of tenderness at this joint on January 2, 1964, when Dr. Zupnik referred Rivera to Dr. Elliot Coles.

Dr. Coles saw Rivera on January 4th and 10th, and on February 4, 1964. His examination on January 4th was negative except for a tender subcutaneous nodule in the left sacroiliac region. He injected novocaine into the nodule on January 10th. He indicated that a nodule of this type may or may not again become symptomatic after the effect of the novocaine wears off. If it does, it can be removed by surgery. He made no notation concerning the nodule on February 4th, and testified that on that date he had concluded there was no longer any tenderness in the left sacroiliac region; he released Rivera from treatment, with instructions to return if he had further difficulty; Rivera did not return.

The trial began January 19, 1965, seventeen months after the accident. Mr. Rivera testified he still had pain in his back, and discomfort in sitting. He said he is nervous and irritable with his fellow workers. His employer's office girl said she saw him frequently lying down on sheets of steel during his noon breaks in 1964.

Upon our review of the evidence, we do not consider an award of $3,000 excessive.

■ *Foundation for an award for future pain and suffering.* Plaintiff Rivera asserts that certain testimony of his doctors laid a foundation for an award for pain and suffering in the future. Defendants dispute the assertion. The trial judge, although concluding that an award of $2,000 for future pain and suffering was excessive, was

of the opinion that the medical testimony was sufficient to meet the rule of *Diemel v. Weirich.*[1] Accordingly he fixed $1,000 as a reasonable amount, and included that in the option given to the plaintiff.

In *Diemel,* we quoted, as follows, from 20 Am. Jur., Evidence, p. 649, sec. 778:

" '. . . where the injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering, the courts generally require the introduction of competent expert opinion testimony bearing upon the permanency of such injury or the likelihood that the injured person will endure future pain and suffering before allowing recovery therefor.' " (p. 268.)

In explanation, we said:

"We believe that sound public policy requires adherence to such rule. It is a rare personal-injury case indeed in which the injured party at time of trial does not claim to have some residual pain from the accident. Not being a medical expert, such witness is incompetent to express an opinion as to how long such pain is going to continue in the future. The members of juries also being laymen should not be permitted to speculate how long, in their opinion, they think such pain will continue in the future, and fix damages therefor accordingly. Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. In the absence of such expert testimony (which was the situation in the instant case) the jury should be instructed that no damages may be allowed for future pain and suffering." (p. 268.)

Dr. Zupnik last saw Mr. Rivera January 2, 1964, one year before trial. Dr. Coles last saw him eleven months before trial. The opinions they expressed as to probable pain and suffering in the future were the

[1] (1953), 264 Wis. 265, 58 N. W. (2d) 651.

opinions they had formed at the time they were treating Mr. Rivera. It is this testimony which must fulfil the *Diemel* rule if any damages may be awarded for future pain and suffering.

Dr. Zupnik's pertinent testimony is as follows:

"*Q.* Would you tell us, please, what prognosis you made? *A.* To be entirely precise, my prognosis dates back to November 5th.

"*Q.* All right, let me have your prognosis as of that date. *A.* My prognosis at that time was that I anticipated Mr. Rivera to continue to have some pain for an indefinite period of time; that future recovery was dependent upon formation of scar tissue which generally occurs in the type of injury he sustained, and that a symptomatic period may be expected until the scar tissue has shown evidence of complete healing. He was advised at the time his back will remain somewhat more susceptible to reinjury; that he may experience easy fatigability of his back. In other words, that his back will tire out easily, and he was advised to continue with his exercises; to avoid any undue strain and stress upon his back.

"*Q.* Doctor, you felt this pain may recur spasmodically for how long a period into the future? *A.* I don't think one could actually set a period. I felt it was indefinite, hinged upon the time required for complete healing of the soft tissue damage.

"*Q.* Am I correct in assuming this could continue for an indefinite period? *A.* Yes, this I indicated."

Had Dr. Zupnik's opinion been based on observations which were reasonably current at the time of trial, we would have no difficulty in finding that it fulfilled the *Diemel* rule. His opinion spoke, however, as of fourteen months before trial, and asserted, as of then, that the pain would continue for an indefinite period, until healing was complete. Had he examined Rivera shortly before trial and been asked similar questions, would his opinion have been that pain would continue beyond the trial date? Had he been asked to assume the existence of the discomfort present at time of trial to which Rivera

testified, would he have given a similar opinion? We do not know.

It is arguable, of course, as a matter of logic, that Dr. Zupnik's opinion fulfils the *Diemel* rule because an indefinite period commencing November, 1963, may well include an indefinite period commencing in January, 1965. We consider, however, that the purpose of the *Diemel* rule is to introduce as much certainty as reasonably feasible into a fact-finding process that is highly uncertain at best, that is, what is fair compensation for such pain as will probably be endured in the future. Bearing in mind this purpose, and the particular circumstances here present, the majority of the court conclude that Dr. Zupnik's opinion (as well as Dr. Coles') were simply too remote to be a foundation for an award for future pain.

Dr. Coles testified that he felt a tender subcutaneous nodule in Rivera's left sacroiliac region, about a half inch in diameter. He described it as a hernia through the opening in the fascia, or covering over the muscle and bone.

He stated no opinion that the nodule would probably remain painful in the future, but indicated that it would continue to be present unless surgically removed. He testified, in part, as follows:

"*Q.* Doctor, what can you do with these subcutaneous nodules? *A.* Well, I have treated many of these cases. In some cases, you treat them conservatively, the way I did with Mr. Rivera. You inject novocaine.
" . . .
"*Q.* Doctor, as far as this nodule is concerned, what is the way that you would recommend to get rid of it? *A.* There are many cases, where the pain is continuous, where it is relieved by novocaine injection. On one or more cases, when the pain comes back when the novocaine wears off, I have excised these nodules, decompressed the fascia to enlarge the opening they come through, to take the pressure off the nerves.
"*Q.* Doctor, by excising a nodule, are you referring to a surgical procedure? *A.* Yes.

" . . .

"*Q.* The only way that you would recommend removal of this nodule is by surgery? *A.* Yes, if it continues to be symptomatic."

We must assume, from Dr. Coles' testimony, that the nodule is still present, and will remain. There is no evidence, however, that the nodule again became tender after the injection on January 10, 1964, nor that it is the source of the discomfort described by Mr. Rivera. The absence of any notation concerning the nodule on February 4, 1964, Dr. Coles' testimony that he thought there was no tenderness on that date, and that Rivera did not return for further attention, all suggest that it had not again become painful.

Plaintiff has argued that the nodule is an objectively determined permanent injury, and that it therefore does not fall under the *Diemel* rule. Though its presence was objectively determined, however, it is an injury "of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering." [2] Had Dr. Coles located the nodule shortly before trial, and testified concerning some degree of likelihood that it would be painful in the future, unless surgically removed, his opinion probably would have qualified under the *Diemel* rule. In view, however, of the nature of the injury as described, and the evidence suggesting that it had not in fact become painful for eleven months after being treated, Dr. Coles' opinion, as of the date of treatment was, in our opinion, too remote from the trial date to fulfil the rule.

[2] The injuries subject to the rule quoted in *Diemel* are described: "Where the injury is subjective in character and of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering." We think it would be better phrased: "Where the injury cannot be objectively determined or where it is of such nature that a layman cannot with reasonable certainty know whether or not there will be future pain and suffering."

Accordingly, the majority of the court conclude that the award of damages for pain and suffering after the trial was unwarranted.

■ *Review on behalf of respondent.* Plaintiff-respondent Rivera asks us to determine that the county court improperly set aside the jury's findings, and to increase his judgment so as to reflect the total of $6,000 damages found by the jury. He correctly points out that his election to take judgment for the reduced amount of damages does not, where his opponent appeals, preclude him from having a review of the trial court's action in setting aside the verdict.[3] In order to have such review, however, he must comply with sec. 274.12, Stats.

Plaintiff's notice of review was served after the case had been set for hearing in this court. Thus it was too late for him to seek modification or reversal of the judgment so as to be more favorable to him. Sec. 274.12 (1), Stats., in that situation requires service of notice "before the case is set for hearing in the supreme court."[4]

To the extent that the correction of the claimed error would merely support the judgment appealed from, a notice of review is unnecessary.[5]

Thus we may review the action of the court in setting aside the $4,000 award for past pain and suffering, because if that was error, our correction of it would merely support the judgment. If we determined the $4,000 award should be reinstated, the present judgment would be supported, even though we determine that the trial court was in error in including $1,000 for future pain and suffering.

It is evident that the trial judge considered incredible some of the testimony of Mr. Rivera as to the various pains he experienced. Judge HoLz remarked: "He was

---

[3] *Plesko v. Milwaukee* (1963), 19 Wis. (2d) 210, 220, 120 N. W. (2d) 130.

[4] *Lee v. Milwaukee Gas Light Co.* (1963), 20 Wis. (2d) 333, 343, 122 N. W. (2d) 374.

[5] Sec. 274.12 (2), Stats.

not honest in the description of his injuries at the trial" and pointed out that his credibility "was substantially and frequently effectively shaken."

Although the judge was very close to invading the province of the jury in weighing credibility, he did have the opportunity to observe Rivera at the trial, and the majority of the court (excluding the writer of this opinion) conclude that the judge could properly determine that the $4,000 award was beyond the range of reasonably debatable amounts.

We have said:

"Where a trial court has reviewed the evidence and has found a jury verdict awarding damages to be excessive and has fixed a reduced amount therefor, and has determined that there should be a new trial on damages unless the plaintiff exercises an option to take judgment on the reduced amount, this court will reverse only if we find an abuse of discretion on the part of the trial court. . . ." [6]

Accordingly the judgment should be limited to the $3,000 allowed for past pain and suffering and the items of special damages. This will require reduction by $1,000, and interest thereon from the date of verdict to the date of judgment.

*By the Court.*—The total amount of the judgment is reduced from $4,834.14 to $3,820.71, and, as so modified, is affirmed. Appellants may tax one half their costs on appeal.

GORDON, J. (*dissenting*). I respectfully dissent from the court's opinion. I will limit my comments to that portion of the majority opinion which holds that there is no basis in the record for an award for future pain and suffering.

Mr. Rivera testified that he had continuing pains; Dr. Zupnik supported that claim with testimony that Mr.

---

[6] *Boodry v. Byrne* (1964), 22 Wis. (2d) 585, 588, 126 N. W. (2d) 503.

Rivera would "continue to have some pain for an indefinite period of time." At another point, the medical doctor stated: "I don't think one could actually set a period. I felt it was indefinite . . . ."

I believe that this satisfies the legal requirement of *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651, as recently examined by this court in *Huss v. Vande Hey* (1965), 29 Wis. (2d) 34, 138 N. W. (2d) 192. In my view, this is true even though Dr. Zupnik's testimony related to a physical examination that was held about a year earlier. The date of the doctor's examination might very well affect the weight to be given to his opinion, but it would not render the evaluation incompetent. Indeed, no claim is made that the opinion was inadmissible. The majority opinion does not declare that Dr. Zupnik's opinion was inadmissible, but, nevertheless, the doctor's opinion is ruled to be insufficient as a matter of law. As I read the record there was sufficient evidence to have enabled the jury to conclude that there would in fact be future pain and suffering; this conclusion was approved by the trial court.

Dr. Zupnik's testimony was relevant and competent; it was not so remote as to bar it from being received as evidence. Since the doctor's testimony was admissible, its import was for the trier of fact—not for this court. We violate the "any credible evidence" rule to which we are so firmly dedicated when we usurp the jury's function of weighing the evidence. A multitude of cases could be cited to support this proposition. The rule is forcefully summarized by Mr. Justice WILKIE's opinion in *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 307, 120 N. W. (2d) 156:

"The rule is well established that a verdict or a finding of a jury will not be set aside or disturbed, 'if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.' *Van Galder v. Snyder* (1948), 254 Wis. 120,

123, 35 N. W. (2d) 187. 'The familiar rule, often declared by this court, that where there is credible evidence to support a finding of a jury we may not disturb it, needs no citation of authorities.' *Mossak v. Pfost* (1950), 258 Wis. 73, 75, 44 N. W. (2d) 922. It should be further pointed out, 'on review this court must accept the credible evidence most favorable to sustain the verdict.' "

As I see it, there is nothing inherently inadequate in a medical doctor's testimony that his patient's pain will continue for an indefinite period. Even though the doctor's appraisal were based on an examination which was a year old, the jury, nevertheless, could accept such opinion. It was the defendants' responsibility to challenge the doctor's opinion by cross-examination or by conflicting medical testimony. Then, the trier of fact was to decide which view was the more tenable.