IANNI (PATRICIA), by Guardian *ad litem*, and another, Respondents, v. GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant: DAIRYLAND INSURANCE COMPANY, Defendant.

IANNI (ISABEL), Respondent, v. GRAIN DEALERS MUTUAL INSURANCE COMPANY, Appellant: DAIRYLAND INSURANCE COMPANY, Defendant.

*Nos. 178, 179. Argued March 4, 1969.—Decided April 4, 1969.*
(Also reported in 166 N. W. 2d 148.)

---

[3] Sec. (Rule) 251.38 (2), Stats.
[4] *Withers v. Tucker* (1965), 28 Wis. 2d 82, 87, 88, 135 N. W. 2d 776.

356

For the appellant there was a brief by *Heide, Sheldon, Hartley & Thom* and *S. Michael Wilk,* all of Kenosha, and oral argument by *Mr. Wilk.*

For the respondents there was a brief by *Phillips & Richards* of Kenosha, and oral argument by *David L. Phillips*.

ROBERT W. HANSEN, J.  The insurer of the Ianni car brings this appeal challenging the finding of negligence as to its insured and challenging both the basis for and amount of damages awarded to the two passengers in the Ianni car.

The only eyewitness testimony is that of Isabel Ianni. Without her testimony there is nothing in this record to support a finding of negligence as to the driver Walter Ianni. The accident reconstruction expert who testified concluded that at impact both cars were entirely in the northbound or Ianni lane; both cars had turned slightly to their right just prior to impact; there was no evidence of skid marks; in his opinion the Ianni automobile was traveling at 50–55 m.p.h. at impact, the Larson automobile traveling at 45–50 m.p.h.

The claim of negligence against driver Ianni is based on the witness-stand testimony of his surviving wife, Isabel. She testified the Ianni car was traveling at 70 m.p.h., and that the Ianni car was traveling down the center of the road. On the witness stand, she recalled seeing the headlights of an oncoming car just prior to the accident, recalled no acceleration or deceleration of the Ianni car after seeing the Larson car, did recall her husband turning the wheel to the right just prior to impact.

The attack upon the credibility of her testimony is based upon prior inconsistent statements made by her. Six days after the accident, at the hospital she made and signed a statement that she did not see any part of the accident because she was asleep and that she did not know how fast her husband was traveling. About nine months after the accident, she signed a proof-of-loss statement for accidental death benefits under the Grain Dealers insurance policy in which she stated that the

Larson vehicle crossed the center line and collided with the Ianni car. Prior to trial, at an adverse examination, she testified that it took from 15 to 20 minutes for the Ianni car to travel from Ellsworth to the scene of the accident.

Contrary to earlier statements made by her, the courtroom testimony of Isabel Ianni did two things; it moved the Ianni car to the center of the highway and increased its speed to 70 m.p.h. This testimony provided support, the only support, for a jury finding that Walter Ianni was negligent in driving at a speed in excess of the posted limits (sec. 346.57 (5), Stats.) and in failing to travel at an appropriate reduced speed (sec. 346.57 (3)). While appellant disagrees, it also provided the underpinning for a jury finding of negligence in failing to drive on the right side of the roadway (sec. 346.05 (1)). If a motorist driving in the center of a road meets an oncoming vehicle, he must turn seasonably to the right, and it is clearly a jury question as to whether such turning was in fact seasonable.

Hinting strongly at the retailoring of testimony to fit the requirements of a case against the Ianni insurer, Grain Dealers urges this court to find the witness-stand testimony of Isabel Ianni incredible and unworthy of belief. Reliance is upon the general rule of law that: "Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting with no explanation of the contradiction, and no other fact or circumstance in the case tends to show which version of the evidence is true, no case is made . . ." (32A C. J. S., *Evidence,* p. 823, sec. 1043.) Where the conflict and contradictions are within the body of the testimony given, the "no case" conclusion follows. Where the conflict or contradiction arises by reason of an earlier statement given by the witness, it is for the jury to determine the question of the weight and credence to be given the witness-stand testimony and prior extrajudicial state-

ment. In a recent case involving an unexplained conflict between the courtroom testimony of a witness and a prior statement made by him, this court stated:

"During the trial Rickert denied unequivocally that his car slid or slued at any time prior to the accident. To impeach Rickert, Hamlin's attorney presented a signed statement given just after the accident by Rickert to Ronald Helland, the Price county traffic officer, in which statement Rickert said his car slued. *The weight to be given to the statement as against Rickert's testimony at the trial was for the jury to decide."* Bach v. Liberty Mut. Fire Ins. Co. (1967), 36 Wis. 2d 72, 78, 152 N. W. 2d 911. (Emphasis supplied.)

The jury may elect to believe the witness-stand account of what happened, and disregard the earlier inconsistent statement of the witness. The jury may choose to believe the truthfulness of the earlier statement, and discount entirely the account presented from the witness stand. The jury may conclude that the inconsistencies revealed in trial and pretrial statements of a witness completely erode his credibility, and give no weight to either statement. To the contention that this gives to the jury a power to pick and choose between conflicting statements, the answer is that such authority is at least in the hands of those who have the opportunity to observe the witness, his demeanor, manner of testifying, hesitancies and similar nuances in speaking. An appellate court has only the cold, hard type of a printed record before it, and is in a poorer position to determine which statement has the ring of truth or whether all statements are to be considered counterfeit.

In dealing with appellant's challenge to the legal basis and amounts awarded in the area of damages, we acknowledge some difficulties arising from the submission of the damage issue on a single question rather than on itemized questions. It is no generalized criticism of the use of single damage questions to observe that by definition they are a combination of unmeasured ingredients.

It is possible to determine what ingredients went into the stewpot, but not how much of any one ingredient was added or is present. Where such single question as to damages is submitted to the jury, it becomes vitally important that the instructions to the jury give guidelines for deciding how much may be added of a particular ingredient, as well as whether it can be added at all.

Appellant contends that the record does not establish a proper basis for the award of damages to Patricia Ianni for future pain and suffering and for loss of future earning capacity.

As to future pain and suffering, the rule in this state is that a nonmedical witness is incompetent to express an opinion as to how long pain will be projected into the future where the future consequences of the injury cannot be objectively determined, *Rivera v. Wollin* (1966), 30 Wis. 2d 305, 309, 140 N. W. 2d 748, and that:

"Only a medical expert is qualified to express an opinion to a medical certainty, or based on medical probabilities (not mere possibilities), as to whether the pain will continue in the future, and, if so, for how long a period it will so continue. In the absence of such expert testimony . . . the jury should be instructed that no damages may be allowed for future pain and suffering." *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. 2d 651.

The only medical expert testimony as to future pain and suffering of Patricia is that of her treating physician who testified:

". . . I had to tell her that I felt that probably in years to come she may have some discomfort in the area of the low back . . . I can't prove this is going to happen. I felt I had to tell the patient this may occur . . . ."

Is this a statement to a medical certainty that future pain and suffering is probable, not just possible? The question is close, but we hold that it falls short of an opinion to a medical probability. It is true that the

word "probably" is used but it is diluted by subsequent uses of the word "may" and by the unclarified reference only to "discomfort." Taking the doctor's statement as a whole, we cannot find it to be a certification to a medical probability of future pain and suffering. For a general discussion of the question of testimony to a medical certainty, *see State v. Muhammad* (1968), 41 Wis. 2d 12, 24, 162 N. W. 2d 567, and cases cited.

On the challenge to the medical expert foundation laid for a jury grant of damages for loss of future earning capacity on the part of Patricia, the deficiency seems more evident. Here the only evidence of permanent injury involved injury to the sacroiliac joint. The testimony of the medical expert, the treating physician, linked this only with possible childbearing difficulties in the future. We find in the record no testimony to a medical certainty linking the injury to the sacroiliac joint with a loss of earning capacity in the future. Nor do we find a basis for presuming that such future loss of earning capacity will occur. On the record as here established, there was no basis for submitting this element of damages to the jury.

It is true that evidence of a permanent injury may be sufficient in itself for the inference of a loss of earning capacity where the nature of the injury by common knowledge disables the plaintiff from performing the only type of work he or she is fitted to do, but, except in such situation, the fact of injury, standing alone, is not sufficient to establish a loss of earning capacity. *Wells v. National Indemnity Co.* (1968), 41 Wis. 2d 1, 162 N. W. 2d 562.

Appellant further contends that the record does not establish a proper basis for the award of damages to Isabel Ianni for loss of earning capacity. We find the same infirmities in the record and can find no guideline for the jury to use in computing or even estimating the extent of such damage sustained by the plaintiff Isabel.

In concluding that elements of speculation and conjecture infect the jury's findings as to loss of future earning capacity of plaintiff Isabel, we begin with some general rules, set forth by Prof. James D. Ghiardi in his book, *Personal Injury Damages in Wisconsin* (1964), ch. 8.

"One who is injured in his person may recover for any consequent . . . loss or diminution of his earning capacity. . . .

"The proper element of damages in such cases is loss of earning power; that is, the permanent impairment of the ability to earn money. . . .

"The burden is on the plaintiff to establish to a reasonable certainty the damages sustained.

"The jury is not allowed to speculate . . . .

". . . mere proof of a permanent injury is not conclusive evidence of impairment of future earning capacity . . . .

"There is no fixed rule for estimating the amount to be recovered for loss or diminution of future earning capacity. . . .

"The process of ascertaining the amount of compensation to be awarded requires (1) the determination of the extent to which such capacity has been diminished, and (2) the fixing of the amount of money which will compensate for the determined extent of impairment.

"The extent of the diminution or impairment of earning capacity is generally to be arrived at by comparing what the injured party was capable of earning at or before the time of the injury with what he was capable of earning after it occurred. . . ."

While these guidelines, and cases cited in support thereof, do not make computation of damages for loss of earning capacity an exact science, they do spell out essential elements and basic requirements for awards in this area of damages.

We are concerned here more with the proper basis being established for measurement of damages than with

the eligibility to damages based on having sustained a permanent injury. Where the nature of the permanent injury by common knowledge disables the plaintiff from performing the only type of work he is fitted to do, compensability follows, according to *Wells v. National Indemnity Co., supra,* unless there is affirmative evidence that there was no impairment of earning capacity, as in *Neider v. Spoehr* (1968), 39 Wis. 2d 552, 159 N. W. 2d 587.

Here it is clear that there was no established employment at the time of the accident. The plaintiff Isabel was a housewife at the time of the accident and death of her husband. She had, the record establishes, worked prior to her marriage in 1947 as a sales clerk and in a factory. There is also testimony that she worked during the marriage on two occasions. However, there is no testimony that establishes how long she worked at each job, during what years of the marriage she had such employment, or, most important, what she actually earned. Such additional facts, as we see it, were not only relevant but required to aid the jury in determining what the earning capacity of the plaintiff was as evidenced at least by the level of her prior earnings. On the issue of the materiality of past earnings in determining the reasonable probabilities of future earning capacity, and on that issue only, we cite *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. 2d 343, 99 N. W. 2d 163. In that case also, the plaintiff was a housewife. As is the case here, the record indicated that she had worked prior to the accident but it was not in evidence how long she worked, what kind of work she did or, most important, what she had actually earned. This court held the testimony not to be sufficient to sustain a finding as to loss of wages. The full information as to prior employment and prior actual earnings appears to us to be essential in giving to the jury the facts as to past employment as an aid to determining future earning capacity. Nothing has happened to change the

rationale of the case in which the matter of future earnings of a nurse in the private-duty field subject to call came before this court, the court's conclusion being:

"In such an assessment (as to future earnings) a jury is attempting to estimate what would have happened had the accident not occurred. In arriving at the reasonable probabilities, it must take into account past earnings, if they are of a character that gives rise to inferences as to the future, and must discount these inferences in the light of common knowledge." *Monsos v. Euler* (1934), 216 Wis. 133, 139, 256 N. W. 630.

It is important that an assessment of future earning capacity not be left to conjecture or speculation. In another case involving a nurse, one who had not worked for approximately a year before the accident, this court denied recovery for loss of earning capacity even though she testified that she had intended to resume her work as a nurse, the court stating:

"Furthermore, if it be assumed that she would engage in nursing at some future time, it still remains an imaginary and speculative question whether she has sustained a loss to her prospective business or individual earnings. We are persuaded that the evidence as to her separate business and individual earnings is wholly insufficient to establish a loss with that reasonable certainty required by law to permit a jury to allow her damages therefor." (*Skow v. Green Bay & Western R. R.* (1909), 141 Wis. 21, 29, 123 N. W. 138. *See also Puhl v. Milwaukee Automobile Ins. Co.* (1959), *supra*.

With the case submitted on a single question as to damages, with very generalized instructions given by the court, with no foundation laid as to prior actual earnings of the plaintiff Isabel, we are forced to conclude that this jury was invited to speculate or conjecture as to the amount of future losses of earning capacity of plaintiff Isabel. On this record, we do not see how they could have done otherwise. Verdicts cannot be permitted to rest upon speculation or conjecture. *Boutin v. Cardinal Theatre Co.* (1954), 267 Wis. 199, 64 N. W. 2d 848.

We do not reach the issue of excessiveness of damages raised on this appeal, particularly as to the damages awarded to plaintiff Isabel. The jury verdicts as to damages are set aside in both cases, and new trials ordered as to damages only. Since Larson's insurer, Dairyland Insurance Company, has not participated in this appeal, the new trial shall be granted to Grain Dealers only. The option of either plaintiff or defendant Grain Dealers to request that the damage question on such second trial be submitted to the jury on itemized questions is reopened, as well as the right of the trial court to direct on its own motion that the issues as to damages go to the jury on itemized questions.

*By the Court.*—Judgment reversed, and cause remanded for a new trial to Grain Dealers Mutual Insurance Company on the issue of damages only.

HANLEY, J. (*dissenting*). I must respectfully dissent to that portion of the majority's opinion which states that the finding of negligence on the part of Walter Ianni is supported by credible evidence.

The majority acknowledges that the only testimony supporting the jury's finding of negligence came from Isabel Ianni. This testimony was not only inconsistent with prior statements given by her, it completely contradicted her earlier statements. Mrs. Ianni could not have been asleep while at the same time forming an opinion as to the speed and location in the roadway of the automobile in which she was riding. Mrs. Ianni never offered any explanation for her contradictory testimony to the jury. If either of the two versions is true, the other must necessarily be false. The majority relies on the general rule that the credibility of the witnesses is the sole function of the jury. I cannot agree that the jury should be permitted to speculate between two absolutely contradictory versions of an accident from the same witness.

I would rely upon the general rule of law that:

"Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting with no explanation of the contradiction, and no other fact or circumstance in the case tends to show which version of the evidence is true, no case is made . . . ." 32A C. J. S., *Evidence*, p. 823, sec. 1043.

This court recently held in *Gelhaar v. State* (1969), 41 Wis. 2d 230, 163 N. W. 2d 609, that under certain circumstances (which were met in this case) a prior inconsistent statement was entitled to substantive evidentiary weight. Thus, in fact, the flatly contradictory statements of Mrs. Ianni were all before the jury. I can see no distinction between contradictory *testimony* from the same witness at trial (which the majority concedes is not sufficient to establish a case unless the contradiction is explained) and testimony which contradicts prior inconsistent statements which have substantive evidentiary value.

I would reverse the trial court's judgment against the Grain Dealers Mutual Insurance Company and order that the complaint against it be dismissed.