Carlton J. KALER

v.

Daniel V. WEBSTER and Ronald Bean.

Supreme Judicial Court of Maine.

Dec. 8, 1975.

T. A. Fitanides, Biddleford, for plaintiffs.

Platz & Thompson by J. Peter Thompson, Lewiston, Mahoney, Robinson, Mahoney & Norman by David C. Norman, Dana A. Cleaves, Portland, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

A charge to a jury permitting it to consider as an element of damages the future loss of earning capacity of a twenty-three year old college student occasions this appeal.

We deny the appeal.

Appellee was involved in a traffic accident in August of 1969. He was a passenger in a vehicle operated by appellant, Daniel Webster, at the time the vehicle collided with a truck driven by appellant, Ronald Bean. Appellee sustained an ankle injury in the crash, which injury resulted in a twenty-four percent permanent impairment of his left leg, (thirty percent impairment of the ankle).

Various claims and counterclaims were filed as a result of the accident but by the time of trial they had been consolidated into a single action—appellee against Webster and Bean jointly with those two parties crossclaiming against one another for contribution.

At the close of the evidence the presiding Justice instructed the jury that if they found that plaintiff was entitled to recover damages, they should consider as part of the damage award the extent to which the plaintiff's injury will affect his capacity to earn in the future.

The jury returned a verdict in favor of the plaintiff in the amount of $60,000, attributing sixty percent of the causal negligence to appellant Webster and forty percent to appellant Bean.

Appellants now assert that it was error to instruct that future loss of earning capacity was an appropriate element of damages in this case because, they say, there was no evidence that appellee's injury would impair his earning capacity in a career as a sociologist.

We do not agree.

In *Goldstein v. Sklar*, Me., 216 A.2d 298 at 309 (1966), we described the nature of the evidence required to establish future impairment of earning capacity:

"Direct and specific evidence of the extent of the impairment, measured in money, is not necessary; it is not essential to recovery of damages for permanent disability that there be in the evidence for purposes of comparison proof of income before and after the accident in support of diminution of earning power. . . .

"The assessment of damages for impairment of earning capacity rests largely upon the common knowledge of the jury or other fact-finder, sometimes with little aid from evidence; helpful evidence is admissible, although it does not furnish any mathematical valuation of the impairment."

That damages for future loss of earning capacity may be recovered without direct or specific evidence and "sometimes with little evidence at all," does not mean, however, that the mere showing of permanent impairment of some sort automatically entitles a plaintiff to an instruction directing the jury to consider such damages. The quantum of evidence which must be produced before the issue can be submitted to a jury varies from case to case. See cases collected in 18 A.L.R.3d 88.

In some situations, as where a laborer suffers the loss of a limb, it is apparent from the nature of the plaintiff's vocation and the injury he sustained that his future earning capacity has been impaired. In such cases the fact of permanent impairment alone is enough to require an instruction that future earning capacity diminution is an appropriate element of damage. *Holder v. Petty*, 267 Or. 94, 514 P.2d 1105 (1973); *Ianni v. Grain Dealers Mutual Ins. Co.*, 42 Wis.2d 354, 166 N.W.2d 148 (1969).

In other cases, however, as where a professional person sustains a relatively minor, albeit permanent injury of some sort, impairment of earning capacity is less ob-

vious and the jury needs evidence connecting the injury to the alleged impairment before it can make a rational assessment of damages. In the absence of such evidence the issue should not go to the jury. *City of Fairbanks v. Nesbett,* Alaska, 432 P.2d 607 (1967); *Ianni v. Grain Dealers Mutual Ins. Co., supra.*

■ Although damages for impairment of earning capacity are by their nature not capable of precise calculation, they cannot be merely guessed at. They must be more than the end product of speculation and conjecture. *City of Fairbanks v. Nesbett, supra; Ianni v. Grain Dealers Mutual Ins. Co., supra.*

■ In the case now before us, it is clear that the mere fact that the plaintiff sustained an ankle injury does not, without more, warrant the conclusion that his earning capacity has been diminished nor does it provide a sufficient basis from which a valuation of any such diminution could be made.

The following additional facts, however, were brought out at trial:

(1) Plaintiff was age 18 at the time of his accident, 23 at the time of trial, and had a life expectancy of 52 years.

(2) Plaintiff was a senior in college at the time of trial. He was a sociology major and had no plans to go on to graduate school.

(3) The injury complained of caused a thirty percent permanent disablement of plaintiff's ankle and a twenty-four percent disablement of his leg as a whole.

(4) As a result of the accident, plaintiff is unable to lift heavy objects or to be on his feet for extended periods of time without experiencing considerable pain.

(5) Plaintiff can still drive an automobile but has difficulty with a standard shift.

(6) Plaintiff can no longer participate in the sports he used to enjoy (golf, bowling, waterskiing, football, baseball), and has difficulty performing tasks around the house.

(7) Before his accident, plaintiff was employed for the summer at a restaurant in Scarborough. He intended to work at a restaurant in Saco during the 1969–1970 school year but was unable to do so because of his injury. Plaintiff testified that he lost about $1,700 in wages because he was unable to work.

(8) Surgery in which plaintiff's ankle is *"fused"* will in all likelihood be necessary in the future. Such surgery will further restrict movement of the ankle.

Although the case is a close one, we think that the plaintiff did introduce sufficient evidence to have the issue of lost earning capacity submitted to the jury.

Appellants urge that courts in several other jurisdictions have concluded on the basis of similar facts that an instruction on future loss of earning capacity was unwarranted. We are directed in particular to *Fairbanks v. Nesbett, supra,* wherein the plaintiff who was a law student at the time of his injury and an attorney at the time of trial suffered an ankle injury almost identical to that of the plaintiff in this appeal. The *Fairbanks* Court held that the jury should not have been permitted to consider future loss of earning capacity as part of their damage award since the plaintiff had offered no evidence of how his injury would affect his abilities as a lawyer.

We agree with the principles enunciated in *Fairbanks* and the other cases cited by appellants.

There is, however, an important distinction between those cases and the situation now before us.

In the instant case, the plaintiff had not yet chosen a vocation either at the time of his accident or at the time of trial. While it is true that he offered no evidence that his ankle injury would adversely affect his

chances of a career in sociology, there is nothing to indicate that he was committed to such a career. One is not necessarily bound to the pursuit of a career in one's major field of study in college.

Plaintiff did offer evidence that his ability to be on his feet for long periods of time and his ability to lift heavy objects had been impaired. He had held jobs in the past which required such abilities, and it is illogical to conclude that simply because he was about to complete a college education, he would not have wished (or might not have been forced for economic reasons) to pursue some kind of strenuous employment in the future.

In this important regard the appellee in this action is unlike the plaintiff in *Fairbanks* who was already committed to his professional career at the time of trial.

We think that the evidence presented by plaintiff, coupled with the opportunity which the jury had to observe the plaintiff on the stand, would permit the conclusion that the plaintiff's earning capacity had been impaired and formed an adequate basis from which the extent of that impairment could be evaluated.[1] There being some basis for the award of impairment damages, it was not error to submit the issue to the "common knowledge" of the jury.

Appellant Bean also asserts that the $60,000 verdict was excessive and unreasonable and should not be allowed to stand.

We do not agree.

As we have said on numerous occasions in the past, the calculation of damages is a matter for the jury. An award will not be set aside unless it can be shown to have been the product of bias, prejudice, improper influence, or a mistake of law or fact. *Wallace v. Coca Cola Bottling Plants, Inc.*, Me., 269 A.2d 117 (1970); *Isaacson v. Husson College*, Me., 332 A.2d 757 (1975); *Goldstein v. Sklar, supra.*

In the instant case, it was stipulated that the plaintiff's medical expenses totaled $1,253 and there was evidence that the plaintiff lost about $1,700 in wages he could have earned during the school year but for the accident. Appellant points to the large disparity between these figures and the total damages awarded by the jury and concludes that the award must have been the product of bias or a mistake of law.

In response to this contention, we quote from *Isaacson v. Husson College, supra*, at 763, where we said

" . . . [A] marked disparity between the medical expenses and the total damages awarded is only one of the many factors to be considered and seldom, if ever, will it be controlling in itself to establish that a total award of damages is excessive as a matter of law."

We went on to hold in that case that the evidence of the plaintiff's pain and suffering and his permanently impaired knee provided ample support for the challenged award.

In the case now before us there was similar evidence of pain and suffering and permanent impairment, and in addition there was evidence that the plaintiff would likely require further surgery in the future.

In light of such evidence, we cannot say that the damage award was excessive.

The entry must be,

Appeal denied.

All Justices concurring.

---

1. We cannot and need not determine what portion of the jury verdict represents compensation for pain and suffering and what portion represents loss of future earning capacity.