Huss, Respondent, v. Vande Hey and another, Appellants.

*November 1—November 30, 1965.*

For the appellants there was a brief by *Benton, Bosser, Fulton, Menn & Nehs,* attorneys, and *Peter S. Nelson* of counsel, all of Appleton, and oral argument by *Mr. Nelson.*

For the respondent there was a brief by *Esler & Green* of Kaukauna, and oral argument by *John E. Esler.*

GORDON, J.

### *Evidence as to Future Pain and Suffering.*

In its instructions, the trial court informed the jurors that in determining the damages they could consider future pain and suffering. It is the contention of the appellants on this appeal that there was no adequate medical evidence upon which the jury could make a finding of future pain and suffering.

The appellants also point out that the trial court declined to instruct the jury regarding the absence of any permanent injuries. Here, too, it is urged by the appellants that the record is devoid of medical proof that any of Mr. Huss' injuries would be permanent.

In *Diemel v. Weirich* (1953), 264 Wis. 265, 58 N. W. (2d) 651, this court asserted that with regard to an injury which is subjective in character it is necessary that damages for a permanent injury or for future pain and suffering be supported by the opinion of a medical expert which is based upon either medical certainty or medical probability. Said the court, at page 268:

"In the absence of such expert testimony . . . the jury should be instructed that no damages may be allowed for future pain and suffering."

This rule has been followed in a number of subsequent cases. *Rogers v. Adams* (1963), 19 Wis. (2d) 141, 146, 119 N. W. (2d) 349; *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. (2d) 568, 572, 117 N. W. (2d) 660; *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 84, 102 N. W. (2d) 393; *Peterson v. Western Casualty & Surety Co.* (1958), 5 Wis. (2d) 535, 540, 93 N. W. (2d) 433.

Mr. Huss' complaints were clearly of the type which are governed by the rule in *Diemel v. Weirich*. He complained of pain in his back and neck. These are the types of injuries as to which the prognostications of one who is not medically qualified are insufficient to support a judgment for damages either as to permanence or as to future pain and suffering.

There is no direct declaration on the part of any medical witness concerning the medical probability as to either permanent injury or future pain and suffering. Dr. Cherkasky was asked his prognosis as to Mr. Huss' condition and gave the following response:

"A prognosis as far as this condition is concerned is guarded, and what I mean by guarded is that it can be aggravated, as I said before, by accidents, by overwork, by sudden twists or falls—any of those things. He can have pain again."

The words "this condition" may relate to Mr. Huss' condition of hypertrophic arthritis; however, even assum-

ing they relate exclusively to the condition which was caused by the accident, we are persuaded that this does not constitute a sufficiently direct statement to qualify within the rule of the *Diemel Case*. Even with the benefit of the foregoing opinion on the part of Dr. Cherkasky, the jurors would have to engage in speculation regarding the likelihood of Mr. Huss' enduring pain and suffering in the future from this accident, and they would also have to speculate on the length of time that it would continue.

Although Dr. Cherkasky also testified that at the time of the trial his patient still had "some residual pain," the doctor did not suggest that such continued residual pain constituted a permanent circumstance.

The jury verdict allowed $4,750 "for personal injuries." There was no delineation as to the component parts of the jury's figure. Thus, it is impossible to determine whether any or some substantial part of such figure represented an allowance for future pain and suffering. There is applicable what this court said in *Nelson v. Boulay Brothers Co.* (1965), 27 Wis. (2d) 637, 644, 135 N. W. (2d) 254:

"Since the verdict included in the answer to the damage question an item which was legally erroneous, we conclude that there must be a new trial on the question of damages. While this court in *Spleas v. Milwaukee & Suburban Transport Corp.* (1963), 21 Wis. (2d) 635, 124 N. W. (2d) 593, has extended the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393, to permit its use in cases in which the prejudicial error was confined to damages, we believe that in the instant case the wiser course is to order a retrial of the damage issue."

It is our conclusion that there must be a new trial as to all issues in this case since there was insufficient medical evidence to support a verdict in which the jury may have included an allowance for future pain and suffering. If the medical proof offered in the new trial is no different from that presented in the case at bar, the trial court should instruct the jury that no award may be

made for permanent injury or for future pain and suffering.

*Admission of Hearsay Evidence.*

The plaintiff had a Wassermann test while in the military service in 1943; this information was received into evidence when Mr. Huss gave his testimony and also when Dr. Cherkasky related the history given him by his patient. The testimony disclosed that bismuth injections were given to Mr. Huss for the treatment of possible lues.

If the bismuth injections were given to correct a luetic condition, this could have been a cause of his backaches, according to the medical testimony. The appellants objected to Dr. Cherkasky's being permitted to testify as to what his patient was told by medical officers during military service as to the reason for the bismuth injections. If this objection were sustained, Dr. Cherkasky would have been foreclosed from giving a complete statement as to Mr. Huss' medical history; particularly it would have barred the doctor from reporting that portion of the history which tended to attribute the apparently positive Wassermann test to malaria and also would have excluded the explanation that the bismuth injections were given only "to be on the safe side" in the event of the "possibility" of lues.

The statements by Mr. Huss and the portion of the testimony by Dr. Cherkasky as to what the coast guard physicians had told Mr. Huss are patently hearsay. However, having received into evidence a part of such history which showed that Mr. Huss had a positive Wassermann test during the war, it was within the court's discretion to admit the additional statements concerning it.

A medical history by its inherent nature will frequently contain statements which are not actually within the probative knowledge of the patient. Nevertheless, if they are told to the physician for the purpose of treatment,

they gain a quantum of trustworthiness; this makes them somewhat comparable to subjective complaints, which this court has held may be admissible under *Ritter v. Coca-Cola Co.* (1964), 24 Wis. (2d) 157, 128 N. W. (2d) 439.

In our opinion, having admitted a portion of the medical history, it was appropriate under a concept of fair play to admit the balance thereof. Mr. Huss, in his direct examination, gave the same basic testimony concerning what he had been told by his military doctors. This constituted further authority for the trial court to admit the same evidence when offered by Dr. Cherkasky. *Mader v. Boehm* (1933), 213 Wis. 55, 59, 250 N. W. 854. We find no error in connection with the admission into evidence of Dr. Cherkasky's testimony as to the medical history given him by his patient.

The court also admitted into evidence over objection the county clerk's record as to the results of a premarital Wassermann test which had been administered to Mr. Huss by a private physician; the results of the state laboratory's findings appeared on the report, and, in our opinion, such conclusion was not admissible in the face of a timely objection.

Counsel for the defendants was entitled to an opportunity to cross-examine the author of the report to challenge the accuracy of the conclusion. Such interrogation could not have been accomplished by cross-examining the county clerk. The right to scrutinize the report itself was not an effective substitute for cross-examination.

In *Estate of Eannelli* (1955), 269 Wis. 192, 212, 68 N. W. (2d) 791, this court observed that "conclusions stated in official records are not admissible." *Voigt v. Voigt* (1964), 22 Wis. (2d) 573, 578, 126 N. W. (2d) 543; *Jacobson v. Bryan* (1944), 244 Wis. 359, 368, 12 N. W. (2d) 789. See also *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 260, 137 N. W. (2d) 6. In our opinion, the admission of this report was erroneous. However, we do not consider that

it went to a critical point in the case and therefore do not regard the error as prejudicial.

## Damages for Physical Therapy Treatments.

Sec. 147.185 (1) (b), Stats., provides that a person may not perform physiotherapy unless he is licensed "by the board of medical examiners nor unless he practices under a prescription and the direct supervision of a person licensed to practice medicine and surgery." In the instant case, physical therapy was rendered on some occasions by a nurse in Dr. Cherkasky's office.

The appellants contend that the nurse did not qualify under the statute to render physical therapy because she was not licensed by the board of medical examiners and because some of the treatments were rendered by the nurse at times when Dr. Cherkasky was not personally present. Because of this, the appellants argue that the charges for such services are not lawful ones.

The appellants point to an opinion of the attorney general (44 Op. Atty. Gen. (1955), 99, 102) and urge that in order to render physical therapy one must be licensed and *also* be under the direct supervision of a physician. We reject such interpretation of the statute. We do not believe that the statute contemplates that one who is licensed by the board of medical examiners to practice physiotherapy must *also* perform under the direct supervision of a medical doctor; nor do we believe that the statute requires one who performs under the direct supervision of a medical doctor to have, in addition, a license from the board.

Whether the medical doctor is physically present or absent at the time physical therapy is rendered by a nurse in his office, the doctor is fully responsible for her conduct under the doctrine of *respondeat superior*. *Yorston v. Pennell* (1959), 397 Pa. 28, 153 Atl. (2d) 255; *St. Paul-Mercury Indemnity Co. v. St. Joseph's Hospital* (1942), 212 Minn. 558, 4 N. W. (2d) 637. Cf. *Fehrman v. Smirl*

(1964), 25 Wis. (2d) 645, 655, 131 N. W. (2d) 314. The services in the instant case were performed by a nurse at the direction of and as an aide to a licensed medical doctor, and we reject the appellants' argument that the doctor's charge for such services was unlawful.

*By the Court.*—Judgment reversed, and cause remanded for new trial.