A.L. LINDELL, O.D., Secretary, Optometry Examining Board
You have asked for my opinion regarding certain problems concerning the practice of optometry by lay refractionists and the fitting of contact lenses by opticians. Your first question is:
"(1) Does the Board have the power under Chapter 449, 227, and 15 of the Wisconsin Statutes to promulgate rules interpreting and defining Sec. 449.01 so as to allow certain objective tests to be administered by unlicensed personnel under the direct supervision of an optometrist or physician?" *Page 372 
The rule-making powers of the Optometry Examining Board are set forth in the following sections of the Wisconsin Statutes:
"449.03 Rule making; enforcement. (1) No rule made by the examining board shall expand the practice of optometry or affect the practice of dispensing opticians, nor shall the examining board enact rules which forbid the employment of an optometrist or declare such employment unprofessional conduct, or prohibit the operation of an optometric department by optometrists in a mercantile establishment."
"227.014 * * *
"(2) Rule-making authority hereby is expressly conferred as follows:
"(a) Each agency is authorized to adopt such rules interpreting the provisions of statutes enforced or administered by it as it considers to be necessary to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation."
"15.08 * * *
"(5) General Powers. Each examining board may compel the attendance of witnesses, administer oaths, take testimony and receive proof concerning all matters within its jurisdiction. It shall formulate rules for its own guidance and for the guidance of the trade or profession to which it pertains, and define and enforce professional conduct and unethical practices not inconsistent with the law relating to the particular trade or profession."
These statutes are important here because our Supreme Court has held that no administrative agency may issue a rule or regulation that is not legislatively authorized, most usually in the statutes creating such agency. Kachian v. Optometry Examining Board (1969),44 Wis.2d 1, 8, 170 N.W.2d 743.
In order to answer your first question, one must examine the definition of the practice of optometry found in sec. 449.01 (1), Stats. In 38 OAG 520 (1949), this office had *Page 373 
occasion to construe this definition, which was then found in sec. 153.01, Stats. There we said:
"In studying the statutory definition of the practice of optometry quoted above it will be readily seen that such practice falls into the two phases or steps.
"First, there is the employment of any means other than drugs to determine the visual efficiency of the eyes or the measurement of the powers or defects of vision. In other words this is the eye examination whichmust precede the employment of corrective measures whereindicated. In the present situation this service isperformed by licensed persons as it should be.
"The second step or phase in the practice of optometry as defined in the statute is `the furnishing, using or employment of any means or device designed or calculated to aid in the selection or fitting of spectacles or eyeglasses; and the adaptation of lenses, prisms and mechanical therapy to aid the vision of any person.'" (Emphasis supplied.) 38 OAG 520, 523.
You have not specified exactly what "objective tests" these unlicensed personnel would be administering under the direct supervision of an optometrist or physician. However, if these tests are in the nature of an eye examination as discussed in the above quotation, it would then be my opinion that the persons administering the same would be engaged in the practice of optometry as defined by sec. 449.01 (1), Stats.
If this is so, these persons would have to be licensed by your examining board, unless they are exempt under the provisions of sec. 449.02, Stats. That section reads as follows:
"449.02 Licenses; exemptions. (1) No person shall practice optometry within the meaning of this chapter without a license to do so and a valid certificate of registration issued by the examining board, except that a dispensing optician need not be so licensed for the practice of optical dispensing.
"(2) This section shall not apply to physicians and surgeons duly licensed as such in Wisconsin nor shall this section *Page 374 
apply to the sale of spectacles containing simple lenses of a plus power only at an established place of business incidental to other business conducted therein, without advertising other than price marking on the spectacles, if no attempt is made to test the eyes. The term `simple lens' shall not include bifocals."
In 10 OAG 247 (1921), this office was asked whether an unlicensed graduate of a school of optometry could practice optometry in the office of his father, who was a physician, before taking his board examination. This office concluded that:
"There is no provision in the statute which authorizes any person to practice optometry under a physician or under any other optometrist. If the father of this person were a licensed optometrist, it would not authorize his son to practice optometry in his office without a license. If that is true, then it is equally true that he cannot practice optometry under his father as a physician. You are therefore advised that this party cannot practice optometry until he has passed an examination and received his license as provided by law." 10 OAG 247, 248.
Furthermore, this "lay refractionist" question was directly answered by this office in an informal opinion to your predecessor dated December 8, 1966. That opinion quoted from 10 OAG 247, 248, supra, and our Supreme Court's decision in State ex rel. Harris v. KindyOptical Co. (1940), 235 Wis. 498, 502, 292 N.W. 283, and concluded:
"Thus, it is my opinion that employment by physicians of unlicensed lay refractionists, who are subject to Ch. 153 of the Wisconsin Statutes, is in violation of said chapter."
There have been no changes in the optometry statutes since the date of the above informal opinion that would lead this office to reach a different opinion on the matter. Thus, my reply to your first question is negative.
Because this area of health care services is so important, I think it is worth noting that some states have enacted legislation concerning the rule of ancillary personnel. I *Page 375 
would particularly draw the board's attention to Article 18 of the California Business and Professions Code entitled "Physicians' Assistants," which was enacted in 1970. In sec. 2510 the purpose of the article is stated as being:
"* * * to encourage the more effective utilization of the skills of physicians by enabling them to delegate health care tasks to qualified physician's assistants where such delegation is consistent with the patient's health and welfare."
Your board should be especially interested in the prohibited medical services set forth in sec. 2514:
"No medical services may be performed under this article in any of the following areas:
"(a) The measurement of the powers or range of human vision, or the determination of the accommodation and refractive states of the human eye or the scope of its functions in general, or the fitting or adaptation of lenses or frames for the aid thereof.
"(b) The prescribing or directing the use of, or using, any optical device in connection with ocular exercises, visual training, vision training or orthoptics.
"(c) The prescribing of contact lenses for, or the fitting or adaptation of contact lenses to, the human eye.
"(d) The practice of dentistry or dental hygiene as defined in Chapter 4 (commencing with Section 1600) of this division.
"Nothing in this section shall preclude the performance of routine visual screening."
I do not mean to pass on the merits of the California legislation in any respect. However, it may serve as a starting point for further consideration of this problem by both the board and the legislature.
Your second question to me is:
"(2) May anyone other than a licensed optometrist or physician fit contact lenses under Sec. 449.01 where such fitting of necessity requires measurement of the eye, adaptation *Page 376 
of the contact lens to the eye, and other determinations concerning the fit of the lenses and the comfort of the patient?"
This question was previously considered by this office in 36 OAG 314 (1947), in response to an inquiry from the president of your board. It was concluded that:
"While there may be some steps in the fitting of contact lenses which do not involve the practice of optometry, such as the grinding of the prescription into the lens, it is apparent that the determination of the need for visual correction, the fitting of the lens to the eye, the optometric refraction, and the writing of the prescription are all a part of the practice of optometry and may be done only by licensed optometrists or licensed physicians and surgeons." 36 OAG 314, 316.
The discussion therein was under ch. 153 of the statutes which, as I pointed out above, has since been renumbered ch. 449 without any major change in substance. Therefore, I reaffirm the conclusion reached in 36 OAG 314, and advise you that no one other than a licensed optometrist or licensed physicians and surgeons may fit contact lenses under ch. 449 of the Wisconsin Statutes.
RWW:SS