BARBARA NICHOLS, Secretary Department of Regulation andLicensing
You have asked whether ophthalmic technicians or assistants performing functions that are included within the statutory definition of the practice of optometry in section 449.01 (1), Stats., under the general supervision of an ophthalmologist are engaged in the unlawful practice of optometry in violation of section 449.02 (1).
I conclude that they are not.
Section 449.02 (1) provides, in part: "No person shall practice optometry within the meaning of this chapter (dealing with optometry) without a license to do so . . ." Section 449.02 (2) provides, in part: "This section shall not apply to physicians and surgeons duly licensed as such in Wisconsin . . . ." Since ophthalmologists are licensed physicians and surgeons, they may perform acts that constitute the practice of optometry without violating section 449.02 (1). And because ophthalmic assistants are performing certain delegated, supervised tasks of an ophthalmologist, they are not in violation of section 449.02 (1) because of section 448.03 (2), which provides in part:
 Nothing in this chapter [the Medical Practices Act] shall be construed either to prohibit, or to require a license or certificate under this chapter for any of the following: *Page 147 
 (e) Any person providing patient services as directed, supervised and inspected by a physician or podiatrist who has the power to direct, decide and oversee the implementation of the patient services rendered.
Thus, the Medical Practices Act exempts from licensure or certification persons performing patient services under the direction and supervision of physicians and surgeons, including the specialist under consideration, ophthalmologists.
In Huss v. Vande Hey, 29 Wis.2d 34, 138 N.W.2d 192 (1965), the supreme court considered the issue of the propriety of a physician's charges for physical therapy services performed by a nurse unlicensed by the Medical Examining Board. The applicable statute prohibited a person from practicing physiotherapy unless he was licensed by the Medical Examining Board or "unless he practices under a prescription and the direct supervision of a person licensed to practice medicine and surgery." Relying on the doctrine of respondeat superior (a legal maxim meaning that the master or principle is responsible for the acts of his or her agent), the court held that a physician's charge for physical therapy services was lawful in spite of the fact that the services were physically performed by a nurse, unlicensed by the Medical Examining Board, when the physician was not physically present. "Whether the medical doctor is physically present or absent at the time physical therapy is rendered by a nurse in his office, the doctor is fully responsible for her conduct under the doctrine of respondent superior." Huss, 29 Wis.2d at 43.
It is my opinion that while there may be an arguable difference between the "under a prescription and the direct supervision" language considered by the supreme court in the Vande Hey
decision and the "as directed, supervised and inspected" language of the current section 448.03 (2) now under consideration, the terms are similar enough for our purposes to conclude that the supreme court would reach the same answer as I have on the issue presented by your first question.
A medical practitioner authorized to delegate tasks under section 448.03 (2)(e) is limited by section 448.21, which provides that physicians' assistants may not perform patient services, except routine screening, in the practice of dentistry, or dental hygiene, optometry, chiropractic or podiatry. *Page 148 
It has been suggested that since physicians' assistants are prohibited by section 448.21 from performing patient services in these four specialty areas, ophthalmic assistants are likewise prohibited from performing optometric services. However, section448.21 only limits a medical practitioner in delegating certain tasks to physicians assistants, not to all ancillary health personnel.
Moreover, ophthalmic assistants and physicians' assistants are separate and distinct classifications of health personnel. Opthalmic assistants generally attend a certified school for two years. Upon graduation and completion of a written examination, they are certified by the Joint Commission on Allied Health Personnel in Ophthalmology, a private organization consisting of several opthalmological organizations and societies. In the program, ophthalmic assistants are trained to perform various diagnostic tasks and measurements under the direction and supervision of a licensed ophthalmologist. In order to be certified, ophthalmic assistants must prove their competency in the following areas: patient history taking, basic skills and lensometry, such as measurement of basic curve, ophthalmic patient services, such as measurement of interpupillary distance for far and near, basic tonometry, instrument maintenance and repair and general medical knowledge and cardiopulmonary resuscitation. Once certified, ophthalmic assistants may be employed as such by ophthalmologists in clinics or hospitals.
Physicians' assistants are a separate classification of health personnel. They must meet specific certification requirements and are statutorily regulated. Since physicians' assistants are not trained to perform optometric tasks, it is reasonable that they are prohibited by statute from performing these tasks. If physicians' assistants are also trained as ophthalmic technicians, they may perform as such under section 448.03 (2).
It is clear that the Legislature did not intend that all personnel who assist physicians be classified as physicians' assistants. Section 448.05 (5) expresses the legislative intent that physicians' assistants be a specific classification of health personnel with rules applicable to that classification. This section provides, in part: "Nothing in this subsection shall be construed as requiring certification under this subsection of other persons who assist physicians." *Page 149 
Your second question reads: "Is a certified optometric technician who practices optometry as defined by Wis. Stats.449.01 (1) under the general supervision of a licensed optometrist engaging in the unlicensed practice of optometry in violation of Wis. Stats., sec. 449.02 (1)?"
The applicable statutes seem to dictate a yes answer.
As noted earlier, section 449.02 bars persons from practicing optometry without a license to do so (except licensed physicians and surgeons). But there is no language in chapter 449, similar to that in chapter 448, that authorizes optometrists to delegate to assistants certain optometric tasks. While statutory authorization may not be necessary for delegation, the section449.02 proscription would render nonlicensed persons operating under the delegation violative of the statute.
My answer to your second question is consistent with the opinions at 10 Op. Att'y Gen. 247 (1921) and 60 Op. Att'y Gen. 371 (1971). Because these two early opinions issued before the enactment of section 448.03 (2), they no longer have a bearing on your first question.
BCL:WHW